Thank you, Your Honor. Good morning. My name is John Morris, and I please the Court. I represent R & R Sails, doing business as HOBYCAT. There are four issues presented by this appeal, including the attorneys' fees issue joined in the consolidated appeal. I don't think they're of equal importance for purposes of argument, but I would like to at least touch on each of the four issues because I think the issues together have some coherence and build upon each other. The first issue, then, has to do with the trial court's interpretation of Rule 26. The very first issue this Court must consider with reference to that issue is whether or not the trial court identified and applied the correct legal rules for the question presented. I submit that as a matter of law, the trial court did not. In its ruling granting Motion in Limity No. 2, the trial court ruled specifically that HOBYCAT failed to produce any documentation of its attorneys' fees claim when it served its initial Rule 26 disclosure in September of 2007, and it ruled further that HOBYCAT was required to have disclosed its billing invoices. I submit that that is an incorrect interpretation of Rule 26. Rule 26, on the contrary, provides only that the initial disclosure need disclose only the names of the witnesses likely to have discoverable information. HOBYCAT did that in disclosing the name of the HOBYCAT executives. And further, it must indicate a computation of each category of damages claimed by the disclosing party and make available for inspection under Rule 34 all of those documents. I submit that HOBYCAT complied with that standard. Therefore, and without wanting to dwell on this issue unless the Court has questions, I submit that the trial court's initial error, legal error, was in grafting onto Rule 26 a requirement that the rule does not support. That, I believe, was the foundation error that led the Court towards the path of the ultimate disposition of this case, which I believe further was violence. Kagan. Well, two things. First, it also said something about category and location, which I don't think you did say. Location might be obvious, but category may be less so in terms of you're assuming that, I mean, it is true that mostly lawyers have bills and mostly it would be invoices, but it's possible there would be some other form of payment. Well, the categories, you're right, Your Honor. I did omit that, and I, that was not intentional. But the point is that there was a categorization of damages in the original Rule 26 disclosure. There's a categorization as to the property damage. But it was a category of documents, not a category of damages. You're right. And there was no, there was no elucidation of what the category of documents were. In that respect, though, I submit that it was. I could have said that first. Secondly, isn't there also an obligation under Rule 26 to update things? And so eventually he asked for the actual documents. That's correct. Now, the only, and you say we don't have any obligation to provide the documents, but you did have an obligation to tell him that he could copy the documents. So, I mean, it's kind of a nitpick, isn't it, to say that when he actually asked to see the documents and you didn't give it to him for six months. Why isn't that a problem? Well, here's why. Because when you originally asked for the documents, we indicated very quickly, Hobiecatz attorneys indicated very quickly that they would, that they were in the and would provide them in due course. Over the course of the next month, the communications between counsel is clear, and the record makes this clear, and I think the briefs set this out fairly. There was an ongoing issue that had not yet been resolved as to whether or not AIG was entitled to unredacted attorney's fees bills or redacted attorney's fees bills. I concede that that issue was not joined as squarely as it might have been by Hobiecatz. Neither, however, was it joined squarely by AIG at one of the pre-trial conferences held by the court, at which time the trial court made fairly clear that it was its inclination, that it was its ordinary practice to deal with these sorts of issues post-trial by way of motion. And so I submit that there is Except that the insurance company was insisting on an attorney trial. Well, it was, at least originally. However, at the November, I think it was November 17, forgive me a moment, November 16, there was an argument held at the court on the motions in Luminae, at which time AIG indicated that if the court was inclined to deny its motion to strike, to exclude use of the bills, then it was then, and if it was, if the court would further provide a brief extension of time and permit for brief discovery, that AIG was prepared to accept Hobiecatz's original proposition and to submit the matter to the trial court to be heard on motion, or by way of very short trial, was the way it was presented, prior to submitting the case to the jury. So even at that late hour, Your Honor, I submit that it was at least a reasonable position for Hobiecatz to take to presume that the trial court would still consider this issue in the ordinary court course by way of, I'm going to call it a motion, it would have been. And why does that relate to whether they had, under Rule 26, not originally, but at the time they were actually asked to see the forms, the records, they had to produce, or if they didn't want to produce them, they could say, you can come to my office and copy them. Yes, because at that point, still, there was this unresolved issue as to whether or not they were entitled to unredacted bills or not. So how long did that issue stay unresolved? I mean, you said a little bit ago that there was a commitment that we were in the process of redacting them, but they never even produced redacted bills, did they? No, they didn't produce redacted bills. They ultimately, several, about a month before the eventual trial date, conceded and... Which was long after discovery had closed, right? Oh, yes, but it was long after discovery had closed that the original request for those bills... No, but you're skipping over the Rule 26, which doesn't require a request. I mean, the problem is that these documents didn't get produced until it was too late for anybody to do discovery, huh? Well, first, in terms of your premise, I think that Rule 26, I mean, at least I submit, that Rule 26 has to be read in conjunction with Rule 34. It specifically says on its face that they shall be made available pursuant to Rule 34. The commentary says that it's the equivalent of a standing Rule 34 request for production, right? The commentary says that from when the Rule was adopted, so... Yeah, so I'm sorry, I've lost track of what your question is. Yeah, so anyway, so the point is, is that once these documents got produced, it was too late to do any discovery about it. I submit that it wasn't too late, Your Honor. Discovery had closed, and it was a month... Oh, discovery had closed, and AIG had made a specific request of the Court to permit limited discovery on that issue, and I submit that that would have been a very simple bit of discovery. Certainly, those documents were produced more than a month before the eventual trial day, and I submit that that would have been more than sufficient time to permit the probably single deposition of the lead trial attorney for Hobie Catt, who would have testified to that. So I concede your point. So, I mean, so basically what you're saying is that the rule has to be read in a way that you can produce things at the last minute, and so long as there's some way that everybody can kind of scramble and reopen discovery, it's okay. I mean, I don't think that's what the rule... No, at the end of the day, what I submit is that Hobie Catt was acting in good faith, that its interpretation of Rule 26 was reasonable given the circumstances of this case, and that it was always acting in good faith, and I'd like to... But you kept saying we're going to produce it the next day, and then you didn't produce it for months. And I confess, if we could go back and do that again, I wish we could do that again. So I acknowledge your point. I acknowledge your point, but I think this is the right place for me to transition to what I believe is our argument number two, which is even if we accept that there was an infraction of Rule 26, I submit that in the overall context of this case, given the very limited amount of discovery that would have been necessary, and given the fact that this was ultimately a death knell sanction to the case, I submit and I recognize that the trial court has broad discretion with respect to these matters. I acknowledge that. I acknowledge that there are some things that Hobie Catt could have done a little bit more expeditiously. But given the overall context of this case, I submit that this is a valid case that would support a conclusion of abuse of discretion in the context of this case, where the rule with respect to abuse of discretion is that sanctions have to be carefully fashioned, that abuse can be shown if less drastic sanctions were available. I submit that there were easily available less drastic sanctions that were available in this case that would have compensated perhaps AIG for the time and effort of having to file the motion, that would have paid them perhaps for the expense of taking one deposition. But otherwise, there really was very, very little that needed to be done with respect to this. Remember, as this case was being worked up, this was not primarily an attorney's fees case. This was a breach of contract, bad faith case, where all of the efforts of counsel throughout the case was directed towards those fundamental claims. The attorney's fees claim only became central when, as a matter of tactics, immediately before the trial, AIG stepped up and paid every single penny of contract damages and interest claimed, thereby isolating the attorney's fees and focusing all of our attention on it. But I submit again that the overall situation of this case, given the overall context, and I won't repeat it all here, it's all well set out in the briefs, that the trial court in this case did abuse its discretion by failing to find a, by failing to fashion a more equitable remedy for this circumstance. Kagan. Were the invoices produced before or after the district court's Rule 26-5? I'm sorry, I missed the last part of your question. Were the invoices produced before the judge ruled on the limiting motion or after? After, Your Honor. After. But again, the reason that was is because I believe Hobie Catt had a reasonable expectation and believed, or had a reasonable argument, that parts of its, of its attorney's fees bills were privileged and had a reasonable expectation that that. Was that your response to the motion on limine?  Was that the response to the motion on limine? I mean, it seems to me this whole redaction issue came up very late. Now, you didn't really raise this redaction question with the court as an explanation until. No, I don't, I don't think that's true. I believe in the early neutral evaluation report that was filed with the court, I believe, and I, gosh, I'm sorry, but prior to that November date, it was specifically called out on the report that there was a question as to whether or not, as to whether or not the redacted copies had to be, had to be provided. At the hearing then, that just became one of. Did you ever ask for a ruling on that question? No. And again, I have, I have conceded that I wish that the issue had been joined more directly. Nevertheless, even conceding that point, I submit that the trial court abused its discretion. I only have several minutes left, and the most important issue that I wanted to address is this one dealing with the trial court's ultimate dismissal of the case. If we accept that Hobie Catt offended Rule 26, if we accept that the trial court did not abuse its discretion in excluding reference to the records, I still submit that it was an error as a, as a matter of law for the trial court to have dismissed Hobie Catt's case. The requirement of the law is simply that Hobie Catt prove that AIG committed a tort, bad faith, and that it show that it suffered damages. Suffered damages. There is no requirement that it establish that it recover damages. That's true. But for purposes of a constitutional punitive damages, to survive a constitutional punitive damages inquiry, you have to have some amount on that damages. Absolutely. Right. How would you get that without running back into the Rule 26 problem again? Two ways. Trial counsel at the time the court made that ruling made a very specific proposal. Let's submit to the jury two questions. One, did Hobie Catt, was Hobie Catt forced to hire attorneys as a result of AIG's bad faith? And if so, question number two, did Hobie Catt suffer at least $1 of damages? But if you only got $1, if that's what you could establish, are you going to lose any? No. And I have an answer, Your Honor. The answer is this. And this was brought specifically to the court's attention at that hearing. Hobie Catt also suffered $438,000 worth of damages in interest on its money. That interest is not provided by contract. Those are not contract damages. Those are monies provided to Hobie Catt as a result of the loss of use of their money for a seven- or eight-year period of time. That money was paid voluntarily by AIG on the eve of trial. But clearly that was tort damages suffered by Hobie Catt, which, again, the suggestion was made that the jury be told of that number, it be further told that it can't award those as damages, but that that number would still stand in the record for purposes of Your Honor's concern about showing a reasonable relationship. I see my time very close to ticking out. I'm hoping if I say done before the clock says zero, you'll give me two minutes on the background.  on behalf of the Defendant Insurance Company of the State of Pennsylvania. Your Honors, there are a few things I would like to address in response to counsel's comments. First of all, he says that the bills were produced more than a month before the trial date. In fact, they were produced two weeks before the trial date, specifically on December the 21st. Secondly, he said that he says that the judge, trial judge, abused his discretion by imposing the sanction that he did. I submit, Your Honors, that Judge Anello did precisely what Rule 37c required him to do or said he should do, whereas here the failure to comply with Rule 26 was neither substantially justified nor harmless. Was one of the things the judge should have considered the availability of something less drastic? Well, I think that the sanction is provided by Rule 37 is whether the – is to preclude the evidence. Substantially justified or harmless. I understand that. But was the judge required to consider whether there was a less drastic way of curing the harm? I don't think so, Your Honor. Let me say this. It is possible that under some circumstances, I suppose, that a failure to comply with Rule 26 might be rendered harmless by some easy, easy device. Because your opposing counsel basically said there was an easy device. Just let him take a deposition of the attorney. Well, Your Honor, it wasn't so easy. And let me explain why. We had not received the records. We needed time to review these records. The – under California – How voluminous were they? I have no idea, Your Honor. We – we – apparently we received them. I have personally have not seen them. I don't believe they're part of the record. But under California law, not only did we have to review the records for whether the charges were necessary and reasonable, but there is also required under California an allocation that has to be made between the contract and the tort causes of action under our California Supreme Court. But that's probably minimal in this instance because the – there was a contract site, you know, for several years until you finally paid the money. And it's fairly likely that most of those fees that were expended were expended on the contract, right? But they don't have any other damage. The only – they have nothing else they were trying to prove by way of a tort other than these fees. And now there's a claim I never – I didn't know about this interest, but nothing else. So they weren't trying to prove any other kind of damages. So it doesn't seem likely there was a whole lot of else in there for a fee. Well, I'm not sure I can agree with you, Your Honor. Of course, without having seen the records, it's impossible to know. Because what was really, I think, perhaps driving this case was the claim of bad faith. In fact, in the plaintiff's brief at page – reply brief at page 12, he says, this was not primarily a case about Hobie Catt's attorney's fees. It was a case about AIG's bad faith claims handling practices. That's what was driving this case. It was the claim not only for the policy benefits, which might have been resolved by other means, perhaps through an appraisal or whatever else the policy provided, but they were also, of course, seeking tort damages and even more significantly punitive damages. So it's by no means clear that – or obvious that everything that R&R's attorneys were doing were related solely to the policy claims. Because, frankly, Your Honor, most of the issues in the case, I believe, I understand, were contract interpretation issues and how the facts stacked up against the policy coverages. So I'm not at all clear that the – That's what I just said. Most of the issues in the case were contract interpretation questions. Yes. But they could be – they were matters that could be resolved as a matter of law. They didn't require lengthy investigations or, you know, whatever it is that occupied their time. Secondly, Your Honor, it – the defendant was entitled not only to have the documents to analyze them, but perhaps to hire an expert to come in and testify or submit a declaration in response. What is it you didn't know all along? I mean, you pretty much – maybe they didn't dot their I's and cross their T's, but they said they were looking for fees. Fees are charged by lawyers. Where is the record of the lawyer's charges going to be in a lawyer's office? It's not hard to figure out. What's the form going to be? It's going to be the bills. That's not hard to figure out either by people who litigate attorney's fees. So that was no mystery. Well, Your Honor, let me just suggest that there was more of a mystery than – than just that. We – we did not even know if they – if they were on a contingency. They could have been on a contingency fee arrangement. We didn't have their retainer agreement. We didn't know if they were – All right. Where's the retainer agreement? It's in their office. Perhaps. But, well, that was something that they should have disclosed in their initial disclosure statement. Well, that – that we have a retainer agreement. They did not have to disclose the agreement, right? That's – the judge was confused about that. They did not have to give you the agreement. Well, I had to say, if we have an agreement, it's in our office. You know that. Yes, Your Honor. But the – the point is, is what I'm saying is, is we did not know what kind of arrangement they had. Right. You could have asked them. Your Honor? You could have said you want to come over to your office and copy your agreement. Your Honor, I would submit that we tried – we tried to go down that path in 2008 when we noticed the definition of their damages expert. And as part of the deposition notice, we said, please produce all records that you have that support your damage claims. This was – this note – this deposition notice was directed to the plaintiffs. Produce the records that support your damage claim. At the deposition, we asked the expert, what have you got to say about attorney's fees? And he said nothing. And he said nothing. Yes. Okay. So what – we don't even know what they're – what they're basing their claim on. We don't know that they're keeping records, because under California law, if you're on a contingency fee But that's not a Rule 26 problem, right? Well, the point is, is that's why it's not our burden to ask them. It's their burden to tell us what they have. And But, in fact, this is what – I mean, to me, as I was saying before, the case really crystallizes around the later period when you, in fact, did ask them. Oh, yes. I understand. And when – you know, they could have said – because you hadn't done a formal other discovery. Right. And if you were only under Rule 26, they could have said come to my office, but they didn't say that. And you're asking for it. It should have been good enough. So that's where I think there's a problem, but I'm not sure there's any problem before that. Well, I think it sort of morphs – perhaps something that is not much of a problem morphs into something that becomes a major problem in June of 2009, when the only damage issue in the case is grant fees. And Your Honor is quite correct that they – not only did they have the redacted documents available on June the 30th, at the excerpt of record, page 149, the R&R's attorney said that these documents were prepared and ready to be sent to Defendant's Counsel, pursuant to Hobby Cat Counsel's email on June 28, stating that the invoices would be delivered. Delivered like all the other exhibits, or most of the other exhibits in the case. So we got nothing. Okay. So why – and not necessarily saying you had to do this, but why didn't you get the documents available? You know you don't have them. You know they're there. Why not – it's very easy. Just file a motion to compel. Well, we made it – we made our – Your Honor, we were not sitting on our hands. We made our position very clear. The question is why didn't you file a motion to compel? Well, because we hadn't – Discovery was closed. It had been closed for months. Okay. So we didn't make a Rule 34 request, so there was nothing to compel. You're telling me – you're telling us that, you know, there's this admission that the documents are available and ready to go. By them. After the fact. Right, right. But they're not producing them, so why not – I mean, the easy thing to do would be – it's a two-pager. They say the documents are available. We need them. Tell them to give them to us. Actually, Your Honor, I think I may have misled you. They didn't tell us at the time that they were available. Oh, I see. They told – these were one of the excuses they came – six months – they came up with six months later. In other words, you weren't told at the end of June that the documents were available then. No. It was only later that you found out that they actually had been supposedly available then. Correct. The last words we got from R&R was they are being redacted and will be produced in due course. Now, we didn't sit on our hands, Your Honors. We raised the issue. We didn't ask for a ruling by the court, but we raised the issue at the July 8th pretrial conference. We mentioned we haven't received these documents. We don't think they're going to be able to use them. They remained silent. They said absolutely nothing about that. Then in the August 4th final pretrial order, we stated – it's in the order itself – our position is they can't use their bills because they haven't produced evidence of grant fees, or maybe – Are you going to address the punitive damages question? Yes, certainly, Your Honor. In addition to that, I have one question. I recall a number of cases in the Ninth Circuit that say that you must first exhaust any lesser sanctions before the drastic sanctions. Well, Your Honor – Does the district court show that in its order that it considered those lesser sanctions? Well, Your Honor, I think that the court did consider the – Where do I find that? Well, it would be in the court's order. It would be in the court's order on the motion eliminating. I can't be specific. I thought your position was that with regard to failure to come forward under Rule 26 that there's an automatic sanction, and I thought implicit in that was some argument that the usual lesser sanctions doesn't apply. I think that's the position, Your Honor. I mean, that's what this Court has been saying. Sorry? That's whose position? The Ninth Circuit's position. Well, it's your position, but I don't know if it's – Well, Your Honor, the – in the Yeti by Mali case, the Court said that the Rule 37c sanction gives teeth to the requirements of voluntary disclosure, that it is a recognized broadening of the sanctioning power that would have existed before Rule 37c, and that the – this Court will give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37c for a violation. And these sanctions can be up to – can apply even when a litigant's entire cause of action or defense has been precluded by precluding the evidence. I just want to make sure I'm understanding the position. So the position is, is that the district judge is not required to consider lesser sanctions. Is that your position? Once the district court has found that the failure to comply was neither substantially justified nor harmless, then the court is entitled to do what Rule 37c says it must do without further – without looking at the public policy in favor of decision of cases on the merits. In other words, you're saying that under Rule 37c, if the judge decides not substantially justified, not harmless, then the availability of lesser sanctions doesn't come into play at all, right? I don't think that it – that this – that this Court has held that under those circumstances, the Court must still look at lesser available sanctions. Sotomayor, I just want to quickly back it up one step. In deciding the harmlessness issue, does the district judge have to consider the availability of some lesser way of dealing with the noncompliance? I think that it – it may, for example, if the court – in other words, the court can refuse to preclude the evidence, finding that, well, if I do A, B, and C, it will be harmless. Well, there's – there's things between saying that it's not precluded and saying that it's precluded in its entirety. I mean, there's – there would be other things. The court would have discretion to do something in between. Okay. But my question is, does the judge have to – is that one of the factors the judge has to consider in deciding whether to exercise – how to exercise his or her discretion? Well, there's certainly nothing in Rule 37 that says, or in the – in the – There's nothing that says, this changes our ordinary rule that the district court must consider lesser sanctions before imposing an ultimate sanction. I'm not aware of anything – I have not read anything where the courts have specifically said that, except when this court said in Yeti by Mollie that 37C is a recognized broadening of the sanctioning power, and we give particularly wide latitude to the And then also in the Wong case, for example, this Court's Wong decision, the court held that it's not enough for the party who hasn't complied with Rule 26 to say, well, we can just get a continuance. This Court in the Wong decision said a continuance is not harmless, so far – particularly so far as the district court is concerned, given the – given the demands on – on trial judges' times. So I would submit that in a situation like this, where up through, you know, just a short period of time before the trial is scheduled to begin, they haven't complied with Rule 26, we file a motion to eliminate telling them, we're moving to exclude your evidence, the trial court finds that the failure to comply was not justified. The Court's conclusion that it was also not harmless under those circumstances, I think, is not an abuse of discretion. One, because it wasn't harmless as far as we were concerned. We needed the bills. We didn't want to spend the last couple of weeks preparing for trial looking at the bills that we should have had six months or – at least six months earlier. And then it was also not harmless so far as the Court was concerned, because Well, there's no finding it wasn't harmless as far as the Court's concerned. Did the Court say, I'm so busy, I can't possibly postpone this? I can't recall. I know the Court specifically made a finding it was not harmless. And you said it was not harmless as far as the Court was concerned. I thought you meant – first you said it was not harmless as far as we're concerned. Then you said it's not harmless. Okay. I apologize. I misspoke. What I meant to say was that in this case, what happened – let me just explain what happened. In this case, the case was set for trial on January the 5th. At one point in the discussions prior – I forget it – what hearing, there was some talk that, you know, the next available date would be in April. So if there were going to be a continuous, it would have to be months. Now, it's possible, I think, that there may have been some talk about, well, maybe there's a period of time in February. But the point was the judge had a busy calendar, a busy schedule. Absolutely. And I think in the Wong case, this – But we still, in some cases, where continuance would be desirable, we consider one factor, whether the judge would be available and when. Generally, there's supposed to be findings in these cases as to – now, maybe not if you say it doesn't matter whether the judge considers any other remedies. I mean, if that's true, that we've changed our basic rule in Rule 37, then it doesn't matter, I suppose, whether the judge is busy or not, whether there are lesser remedies, whether the additional costs to you – it's not exactly as if you were a dying plaintiff in an injury case. I don't think it does you a lot of harm to hold your money longer. So there are ways to compensate you for any damages you've suffered. And if this were not covered by a rule that says we've changed our ordinary rules about the district court's obligation to examine and consider lesser sanctions, I think you would have a problem. But I think we'll have to check to see whether you're correct, that whatever that case is relieves the district judge of its normal obligation. I gather the argument that you're making, the Yeti argument, is based on the fact that this – that 37c1, unlike other sanctions sections, don't even say the district judge is imposing sanctions. It says that a party without substantial justification fails to disclose the information or to end a prior response under 26. Rule 26 is not allowed to use the evidence at trial. Correct. By rule. Right. And I don't see how a judge can be faulted for abusing his discretion when he does precisely what the rule says he should do. And in this case, I think that – and I think another fact of the courts that I've seen the courts consider is, well, how willful was the conduct by the nondisclosing party? Well, Your Honor, there is simply no excuse for what happened here. Even under Rule 34 that they keep relying on, they were required to produce the bills to the extent they didn't have an objection to them. Rule 34 itself, if we had – if this were being handled under Rule 34, they would have had an obligation to produce what we requested to the extent they didn't have objections to it. That means the redacted documents. They had no right to hold on to the redacted bills past June 30th, when apparently we learned after the fact they were ready to be delivered. Why they held on to them, Your Honor, is absolutely inexplicable. Now, Your Honor, I do want to touch on – You better move on to your final thing. Yes, Your Honor. Your five minutes is over. I do want to – I do assume you're aware of our case that says you can get punitive damages, even though you only have nominal damages. Well, Your Honor, I think that it is – there have been cases in the past which have recognized that under some circumstances a nominal award of punitive – of compensatory damages may support an award of punitive damages. But that's – I don't think any of those are this kind of case. I mean, there's cases – So you don't need actual damages to measure the punitive damages. What you need is actual substantial harm. Right. Now, you can – So, Your Honor, all I'm getting clear is you don't need compensatory damages. You need an injury or harm. Yes. But the question is how do you measure that harm? How do you establish that that – the Potter case, the California Supreme Court case, which is the most substantial harm? And the question is how can that be actual and substantial if it's like, for example, $1? Well, it can't be. Not in the ordinary course, because that's a trivial sum. However, there are some cases where nominal damages – you may only be able to get nominal damages as a money award, but you can – you have proved that you suffered actual substantial harm. We set forth those cases in our brief. Defamation, presumed damages. Well, that's not this case. Cases where you can't get money damages, for example, an injunction or maybe restitution or maybe a technical trespass. You may have suffered substantial harm, but you're just – it's just not going to be reflected in dollars. And then there's a – then there's the situation where it is the defendant's conduct which has made it hard to measure the damages. But that's not the situation here. But for R&R's conduct, they would have been able to prove their loss, by the way, of grant fees, to the dollar. But it was only because they breached their obligations under the – under the rules that they weren't able to put on their evidence and prove that they suffered harm. Well, that's – that's the last thing I wanted to talk to you on. I have a couple of responses to that. First of all, it's been – it was waived. They didn't talk about loss of use damages in their opening brief. At least they didn't – they didn't refer to loss of use damages as justification for the punitive damage award. That's why we didn't address it in our – in our appellee's brief. They talked – in fact, here's what they said. Oh, forget that. Address it now. Okay. So at page 58 of – okay. Well, they – they just talk about the attorneys' brief. I just want to know what that is. Secondly, the interest on the policy benefits is a form of contract damage. And under California law, you can't get punitive damages in an action arising out of contract. And I will cite the California shopper's case for that proposition at 175. Which proposition? For the proposition that interest on policy benefits is a form of contract damage. So basically what you're saying is that that would not support a punitive damage award? Correct. Because it's not tort damage. Correct. You don't need to prove bad faith to get interest on your policy benefits. You do need to prove bad faith in order to get grant fees. That's what distinguishes grant fees from everything else. And I do want to cite to the jump site is page 30. In fact – If – why – if the amount – if they were not seeking the fees as damages, but only seeking to establish that they had substantial fees in order to support a punitive damage award, why would the Rule 26 ruling get in their way? I mean, why – why couldn't they just get somebody to stand up and say, boy, we paid a lot of attorney's fees? Yeah. Well, the problem is how much of that was attributable to the – to your contract claim, which is recoverable under grant fees, and how much of that was attributable to your bad faith claim, which is not recoverable as grant fees? We paid a lot of – we paid a lot of attorney's fees for the contract claim. Well, the problem is how can we, as the defendant trying to deal with this evidence and put it into perspective, at least for punitive damages, how can we cross-examine that? How can we deal with some – a witness who gets on the stand and testifies that that's what happened? The – the Cheddick case, which we cite in our brief out of the D.C. Circuit, Your Honor, I submit is right on point. It involved attorney's fees. It involved a claim for punitive damages. And the D.C. Court of Appeals said that the trial court properly excluded a witness from getting on the stand and saying, this is how much we paid in attorney's fees, doing precisely, I think, what Your Honor's been referring to. The point is, is that in order for the jury to award punitive damages, it has to know what the underlying tort loss was, what the actual substantial damages were in the case. And the only way it could do that is if you come in through the – through the – through the evidence that they never disclosed. The evidence that we didn't have available to cross-examine their – whatever expert they put on the stand with and – and to put into perspective this claim for brand fees, which it is not self-evident that it was – that it was very large. Thank you very much, Your Honor, for your time. Thank you, Your Honors. I'd like to make three very fast points. If we – even if we accept for a moment that HOBICAD had no right to hold on to its redacted documents, I – as long as it did, I still submit that the trial court was obliged to consider lesser sanctions. And in this case, no matter how many times they scanned the – The wording of 37C. I'm sorry? Why, given the wording of 37C? Because I think it's implicit in all of the case law that deals with this subject. I'm not sure. Which subject? Which subject? I'm subject of sanctions for discovery. But this isn't really written as a sanction. I'm sorry? It isn't really written as a sanction. Clearly, however, though, it was a sanction in this case. It doesn't seem to require the district court to even do anything. I'm sorry. I don't have the language of your brief. I read it before. What's the lesser sanction? Is the lesser sanction a continuity? The lesser sanction is permitting to reopen discovery for purposes of taking a single deposition, probably, and I remind the court. But the district court – you know what? The district court did consider that. I mean, it's in the order. It says that we – you know, this would require potentially an expert to go through these things and analyze them, and schedules mean something, and the law doesn't require, you know, continuing things. I'm not sure I accept that an expert was necessary. Indeed, I don't think – I don't think – But this is abuse of discretion, and you're saying the district court didn't consider it. The district court did consider it. It's in the order. Isn't it? I'm sorry. I don't have the order. I had a second. Okay. It's in the motion in lemonade ruling, and it's – I don't have the – it's the order on motions in lemonade 1, 2, and 7, and it's – It's motion in lemonade number 2. I just don't have it right in front of me here. So it says, defendant cannot be expected or required to defend a damages claim without having the prerequisite access to the evidence. If the court denies defendant's motion, the court will have to reopen discovery, allow defendant a reasonable amount of time once the evidence is produced to review it, and hire an expert to analyze it and prepare a written report, will then likely need to be deposed, and basically goes on to say that that kind of disruption isn't required. So you can't say that the district court didn't consider all those things. He did and rejected them. I submit, however, that the trial court was not exactly right in that respect. That is to say, there was no need for an expert in this case. Had there been a need for an expert, AIG would have designated one more than a year and a half ago, a year before they even asked the very first time to see the bills. People don't designate experts under 26A2 until they're prepared to do a report, which this person, which this hypothetical expert couldn't have done until they saw the documents, I would assume. Anyway, it's – move on to your next point. Okay, well, my point was that they really didn't need additional time for this. These matters are routinely handled in post-trial motions that accord each party several weeks only, and I submit that would have been more than adequate in this case. More importantly, though, I'd like to – They had a legal right to a jury trial. I'm sorry? They had a legal right to a jury trial. Of course they did. So it can't be that the sanction has to say I don't have a jury trial. No, but they had already volunteered that if the court was to deny the motion, they were prepared to submit the matter by way of – well, they still called it a trial, but in essence it would have been by way of submitted motion. That was something that AIG had already conceded it was prepared to undertake. If I can close with this point, however, there is compelling law, both from California and from this court, indicating that punitive damages can be awarded even if there has been no award of compensatory damages. I'd like to close specifically with this as a cautionary point. I'd like to quote precisely from the trial court on this point because I think it's compelling. If this court were to affirm this judgment in its present manner, it would provide a roadmap for insurance companies to avoid punitive damages always. They need only do, as the trial court itself observed, and I quote from excerpts of record page 84, if we were to carry it to its logical conclusion, any insurance company could simply stonewall its insurance for years and years and years and then at the last possible second, just before the thing comes to trial, pay everything, including presumably the attorney's fees, pay everything at the last minute and then be allowed to avoid punitive damages just over the grief they claim they have suffered over the last several years just because there are no provable damages to the jury. I submit that that is a horrible policy resolution that is implicated in this case. For all of those reasons, I respectfully ask that the court reverse the ruling of the trial court and remand this case for further proceedings to determine the appropriate amount of attorney's fees award and the punitive damages, if any. Thank you. Thank you, counsel. Case just argued will be submitted.
judges: Kennelly, Reinhardt, Berzon